**CENTERVIEW/GLEN AVALON HOME-OWNERS ASSOCIATION, an unincorporated association, Plaintiff,**

v.

**Claude BRINEGAR et al., Defendants.**

**No. 73-2026-IH.**

United States District Court,
C. D. California.

Nov. 9, 1973.

Christopher Strople, Torrance, Cal., for plaintiff.

William D. Keller, U. S. Atty., by John L. Guth, Asst. U. S. Atty., Los Angeles, Cal., Harry S. Fenton, Chief Counsel of California Dept. of Transportation, Sacramento, Cal., Joseph A. Montoya, Deputy Chief Counsel, by Benjamin B. Salvaty, Christopher C. Foley, Robert V. Cohune, Lawrence J. Booher, Jr., Attys., Dept. of Public Works, State of Cal., Legal Div., Los Angeles, Cal., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO FIRST AND THIRD CAUSES OF ACTION

IRVING HILL, District Judge.

The above entitled cause came on regularly for hearing on September 24,

1973, and September 28, 1973, in the courtroom of the Honorable Irving Hill, United States District Judge. Plaintiff appeared by and through its attorney, Christopher Strople. Defendants Claude Brinegar, as Secretary of Transportation, Sheridan A. Farin, as Administrator for Region 9, Federal Highway Administration, Department of Transportation, Donald E. Trull, as Division Engineer, Federal Highway Administration, Department of Transportation, appeared by and through their attorney, William D. Keller, United States Attorney, by Matthew Schumaker and John L. Guth, Assistant United States Attorneys. Defendants California Highway Commission, California Department of Transportation, James A. Moe, as Director of California Department of Transportation, Robert Datel, as State Highway Engineer, California Division of Highways, California Department of Transportation, appeared by and through their attorney, Harry S. Fenton, Chief Counsel of the California Department of Transportation, Joseph A. Montoya, Deputy Chief Counsel, by Benjamin B. Salvaty, Lawrence J. Booher, Jr., and Robert V. Cohune, Attorneys for the California Department of Transportation. Evidence by way of affidavits, documents, photographs and other exhibits was introduced. A separate Judgment has heretofore been entered dismissing the Second Cause of Action. The matter having been argued by the parties, and the Court having taken the matter of the First and Third Causes of Action under submission for decision, and the Court being fully apprised in the premises, and GOOD CAUSE APPEARING THEREFOR, the Court does now hereby make the following:

## FINDINGS OF FACT

### 1

Plaintiff is an unincorporated association of homeowners in the City of Carson, California. The name of the association derives from the names of two contiguous housing tracts consisting of an aggregate number of approximately 483 homes, located in the northern tip of the City of Carson. Plaintiff association has been in existence since 1963. It has a constitution and by-laws which provide that it is organized on behalf of the residents of the Centerview/Glen Avalon Tracts to deal with the problems concerning them; to maintain and increase the value of the property within the area; to uphold and promote standards of safety within the area; and to generally identify and protect the best interests of the residents constituting the members thereof. The association schedules and holds regular meetings, including meetings on the actions instituted herein.

### 2

Defendant Claude Brinegar is the Secretary of Transportation of the United States of America, and has the overall authority and responsibility for approval and supervision of programs conducted by the Federal Highway Administration (hereinafter referred to as FHWA), an agency within the Department of Transportation. Defendant Sheridan A. Farin is the Administrator for Region 9 of the FHWA, and is responsible for approval and supervision of programs conducted by FHWA within said Region, within which the instant construction of Route 91 is pending. Defendant Donald E. Trull is the Division Engineer of the FHWA in the State of California, and is responsible for approval of federal-aid highway programs within the State of California. Said defendants are hereinafter referred to collectively as the "federal defendants."

### 3

Defendant California Department of Transportation is an agency of the State of California, authorized and directed to provide for the construction of all State highways, including those which are part of the system of federal-aid highways, on locations designated by the California Highway Commission. Defendant James A. Moe is the Director of the California Department of Transporta-

tion, and is charged with the overall control and supervision of the activities of said Department. Defendant Robert Datel is the State Highway Engineer and Chief of the Division of Highways, a subagency within the Department of Transportation, and said defendant is charged with the overall control and supervision of the activities of said Division. Said defendants are hereinafter referred to collectively as the "State defendants."

4

The portion of Route 91 (also referred to herein as "the Artesia Freeway project") at issue in this case is that portion between the Route 7 Freeway (also known as "the Long Beach Freeway") and Normandie Avenue, a distance of six and one-half miles. Within this stretch of Route 91, there are three contracts pursuant to which work is presently proceeding. Proceeding from east to west, the first contract covers part of the Route 91/Route 7 Interchange and stretches from 0.4 miles west of Atlantic Boulevard to 0.3 miles west of Long Beach Boulevard. The second contract covers that portion of Route 91 which stretches from 0.3 miles west of Long Beach Boulevard to 0.4 miles east of Wilmington Avenue. The third contract (sometimes referred to as "the Carson segment") covers that portion of Route 91 which stretches from 0.6 miles west of Alameda to Main Street. This latter portion is that which is adjacent to the Centerview/Glen Avalon Tract to the south of said tract.

5

State Route 91 is part of the California freeway and expressway system. The California Highway Commission originally adopted the route for the conventional highway for Route 91 (then Route 175) in two actions: On August 7, 1936, and September 29, 1939. In two separate actions, i. e., in 1954 and in 1959, the Commission declared Route 91 to be a freeway.

6

On August 19, 1957, the State of California, Division of Highways held a public hearing at David Starr Jordan High School in the City of Long Beach. This public hearing covered that portion of the Route 91 Freeway from 2,000 feet west of Alameda to Gridley Road, the latter being east of the Route 7 or Long Beach Freeway.

Thereafter, on November 12, 1958, at the auditorium of the State Building in Los Angeles, California, the California Highway Commission (hereinafter "the Commission") held a public hearing on the same portion of the Route 91 Freeway as that covered in the public hearing held by the Division of Highways on August 19, 1957. Further, the Commission made a Report and Findings re Freeway Location on the Route 91 Freeway.

Moreover, on December 11, 1968, a public meeting was held at the Starr King Community United Presbyterian Church by the Division of Highways to discuss an alignment shift of the Route 91 Freeway in the City of Long Beach near the Route 91/Route 7 Interchange. This portion of the Route 91 Freeway is approximately four miles from the Centerview/Glen Avalon Tract. This alignment shift was approved by the City Council of the City of Long Beach at its regularly scheduled City Council meeting on June 17, 1969.

7

Over a period of years, State defendants have entered into freeway agreements with the County of Los Angeles and the cities through which the Route 91 Freeway traverses. As early as February 5, 1959, a freeway agreement was entered into between State defendants and the County of Los Angeles, through its Board of Supervisors, at its regularly scheduled meeting on January 6, 1959, covering that portion of Route 91 between ¼ mile west of Avalon Boulevard and ½ mile west of Alameda Street. A portion of the limits of this freeway agreement is adjacent to the property

upon which the Centerview/Glen Avalon Tract is situated. The limits of this freeway agreement includes a portion of the "Carson segment."

On October 28, 1963, a freeway agreement was entered into between State defendants and the County of Los Angeles, through its Board of Supervisors, at its regularly scheduled meeting on September 17, 1963, covering that portion of Route 91 between Figueroa Street and ½ mile west of Alameda Street. A portion of the limits of this freeway agreement is adjacent to the property upon which the Centerview/Glen Avalon tract is situated. The limits of this freeway agreement includes a portion of the "Carson segment."

On March 24, 1969, a binding and enforceable freeway agreement was entered into between State defendants and the City of Carson at its regularly scheduled City Council meeting on March 24, 1969, covering that portion of Route 91 between Figueroa Street and Avalon Boulevard. All of the portion of the Centerview/Glen Avalon Tract which is adjacent to the Route 91 Freeway was covered in this agreement. The limits of this freeway agreement includes a portion of the "Carson segment."

Thereafter, due to the elimination of two pedestrian undercrossings, a new freeway agreement between State defendants and the City of Carson was initiated at its regularly scheduled City Council meeting on March 19, 1973. The limits of this agreement were from Figueroa Street on the west to Central Avenue on the east, and this agreement included all of the portion of Route 91 to which Centerview/Glen Avalon is adjacent. The limits of this freeway agreement includes a portion of the "Carson segment."

8

When Centerview Tract was developed, the line of development was laid back by the developer thereof to coincide with the proposed right of way line for the Artesia Freeway. Thereafter, by deed recorded on December 29, 1967, in Book D3872, page 421, Official Records of Los Angeles County, State defendants acquired the undeveloped portion of the property owned by the developer. This acquisition was made for right of way for the Route 91 or Artesia Freeway.

9

The Route 91 Freeway has received considerable publicity. Newspaper articles on the Route 91 Freeway have appeared in newspapers since at least 1958. Moreover, on October 8, 1969, and October 15, 1969, State defendants caused to be published in the *Los Angeles Times* and the *Wilmington-Carson News Advertiser-Press* a public notice of opportunity for design hearing on the Route 91/Route 11 (also known as "the Harbor Freeway") Interchange pursuant to FHWA Policy and Procedure Memorandum 20–8 (PPM 20–8). This notice was reasonably calculated to put plaintiff association on notice of the opportunity to secure a design hearing. No member of plaintiff association requested a design hearing pursuant to this notice. Additionally, on December 17, 1969, pursuant to PPM 20–8, State defendants caused to be published in the *Los Angeles Times* and the *Wilmington-Carson News Advertiser-Press* a public notice of request for design approval. Finally, on February 4, 1970, State defendants caused to be published a public notice of approval by the United States Bureau of Public Roads in the *Los Angeles Times,* the *Wilmington-Carson News Advertiser-Press* and the *South Bay Daily Breeze.* Both of the latter notices covered the same portion of Route 91 Freeway as did the public notice of opportunity for design hearing.

10

The Route 91 Freeway, between Route 7 and Route 11, has been discussed at several meetings of the City Council of the City of Carson, including meetings on March 24, 1969, June 26, 1972, November 20, 1972, December 18, 1972, February 5, 1973, February 15, 1973, February 26, 1973, and March 19, 1973.

On August 29, 1971, C. G. Bork, one of State defendants' engineers, met with members of plaintiff association at an elementary school in the Centerview/Glen Avalon Tract. This meeting was attended by Aaron M. Carter, president of plaintiff association. This meeting was preceded by a letter dated August 16, 1971, from Mr. Bork to Mr. Carter confirming the details of the meeting, including Mr. Bork's intention to discuss the proposed construction of the Artesia Freeway, and the scheduling of the construction. The meeting was also preceded by an article appearing on the front page of the August 24, 1971, edition of the *Carson-Dominguez News*, announcing the meeting.

At this meeting Mr. Bork discussed all of the details of the proposed design of the Artesia Freeway project, including the height of the fill section that would be adjacent to the Centerview Tract. Mr. Bork made a presentation using slides indicating the design of the freeway. Further, Mr. Bork said that the design of the freeway was final and it could not be changed.

12

The California Highway Commission initially voted funds for the acquisition of right of way for the Artesia Freeway project in October, 1956. These funds were voted for the 1957–1958 fiscal year.

13

In the portion of Route 91 which includes part of Route 91/Route 7 Interchange the following activities were initiated on the following dates:

| | |
|---|---|
| Right of way acquisition | February 10, 1960 |
| Right of way clearance | March 10, 1964 |
| Relocation of utilities | December 29, 1967 |
| Approval of construction funds by California Highway Commission | October 21, 1970 |
| Advertisement for bids for construction contract | November 27, 1972 |
| Award of Contract | February 7, 1973 |
| Commencement of work by contractor | February 16, 1973 |

As of August 30, 1973, the construction work under this contract was 34% complete.

14

In the portion of Route 91 in which Federal funds are involved, the following activities were initiated on the following dates:

| | |
|---|---|
| Right of way acquisition | August 29, 1960 |
| Right of way clearance | November 25, 1963 |
| Relocation of utilities | March 13, 1968 |
| Approval of construction funds by California Highway Commission | June 17, 1970 |
| Advertisement for bids for construction contract | February 22, 1972 |
| Award of Contract | May 11, 1972 |
| Commencement of work by contractor | May 23, 1972 |

As of August 30, 1973, the construction work under this contract was 77% complete.

15

In the Carson segment the following activities were initiated on the following dates:

| | |
|---|---|
| Right of way acquisition | November 17, 1960 |
| Right of way clearance | March 24, 1966 |
| Relocation of utilities | January 16, 1969 |
| Approval of funds by California Highway Commission | October 21, 1970 |
| Advertisement for bids for construction contract | March 12, 1973 |
| Award of Contract | May 29, 1973 |
| Commencement of work by contractor | June 19, 1973 |

As of August 30, 1973, the construction work under this contract was 10% complete.

16

For the Route 91/Route 11 Interchange, right of way acquisition was initiated in August of 1962, and right of way clearance was initiated in April of 1965.

17

For the Long Beach Freeway Interchange portion of Route 91 defendants have expended the following amounts, the first figure being the total amount expended from the commencement of the

project to August 30, 1973, and the second figure being the amount expended in the 13 months immediately preceding August 30, 1973, to wit: July 1, 1972, to August 30, 1973:

| Design engineering | $ 710,000 | $ 73,000 |
| Right of way support | 172,000 | 26,000 |
| Right of way outlay | 4,988,000 | 3,000,000 |
| Construction engineering | 430,000 | 430,000 |
| Construction outlay | 3,639,000 | 3,639,000 |

The approximate total amount expended on this section for the life of the project to date is more than $9,938,000, and for the last 13 months is $4,171,000.

### 18

For the federally funded portion of the Route 91 Freeway defendants have expended the following amounts, the first figure being the total amount expended from the commencement of the project to August 30, 1973, and the second figure being the total amount expended in the 13 months immediately preceding August 30, 1973, to wit: July 1, 1972, to August 30, 1973:

| Design engineering | $ 890,000 | 0 0 0 |
| Right of way support | 23,000 | $ 9,000 |
| Right of way outlay | 6,549,000 | 1,669,000 |
| Construction engineering | 640,000 | 630,000 |
| Construction outlay | 5,887,000 | 5,600,000 |

The approximate total amount expended on this section for the life of the project to date is more than $13,989,400, and for the last 13 months $7,908,000.

### 19

For the Carson segment of the Route 91 Freeway defendants have expended the following amounts, the first figure being the total amount expended from the commencement of the project to August 30, 1973, and the second figure being the total amount expended in the 13 months immediately preceding August 30, 1973, to wit: July 1, 1972, to August 30, 1973:

| Design engineering | $ 632,500 | $ 232,000 |
| Right of way support | 500,000 | 34,400 |
| Right of way outlay | 5,383,000 | 1,763,000 |
| Construction engineering | 140,000 | 103,000 |
| Construction outlay | 1,393,000 | 1,261,000 |

The approximate total amount expended on this section for the life of the project to date is more than $8,048,500, and for the last 13 months $3,393,400.

### 20

For the Harbor Freeway Interchange portion of the Route 91 Freeway defendants have expended the following amounts, the first figure being the total amount expended from the commencement of the project to August 30, 1973, and the second figure being the total amount expended in the 13 months immediately preceding August 30, 1973, to wit: July 1, 1972, to August 30, 1973:

| Design engineering | $ 1,213,000 | $ 380,000 |
| Right of way support | 265,000 | 215,000 |
| Right of way outlay | 2,439,000 | 1,111,000 |

The approximate total amount expended on this section for the life of the project to date is more than $3,917,000, and for the last 13 months $1,706,000.

### 21

Pursuant to obligations entered into by defendants prior to the commencement of this action, a halt in the construction process by the issuance of an injunction, or otherwise, for a six-month period would result in damages to defendants in that following amounts:

| Long Beach Interchange portion of Route 91 Freeway, $348,000, together with an escalated construction cost of 2.5%, or | $455,563 |
| Federally funded portion of Route 91 Freeway, $720,000, together with an escalated construction cost of 2.5%, or | $ 70,756 |
| Carson segment of the Route 91 Freeway, $822,600, together with an escalated construction cost of 2.5%, or | $206,787 |

### 22

The issuance of an injunction to prohibit further work on the Route 91 Freeway would create substantial public hazards by reason of the uncompleted work, including but not limited to falsework for bridges, incomplete drainage facilities which would impede the existing flow pattern of water, the exposure of excavation sites as attractive nuisances, and the erosion of fill material as well as potential mud damage to landowners adjacent to the Route 91 Freeway.

The National Environmental Policy Act became effective on January 1, 1970. The provisions of the Federal-Aid Highway Act relating to public hearings became effective August 23, 1968.

Plaintiff filed this action on August 24, 1973.

## CONCLUSIONS OF LAW

From the foregoing findings of fact, the Court makes the following conclusions of law:

1

Plaintiffs' claims for equitable relief are based on the alleged failure of the Defendants to comply with the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) (hereinafter "NEPA") and the publc hearing provisions of the Federal Aid Highway Act (23 U.S.C. § 128) (hereinafter "FAHA"). The claimed violations are entirely procedural in nature, i. e., a failure to file an environmental impact statement as required by NEPA and a failure to hold public hearings as required by FAHA.

2

If Defendants have violated NEPA, said violation occurred as soon as a reasonable period of time passed after the effective date of the Act, January 1, 1970, since the Artesia Freeway Project was already an ongoing project on that date and no environmental impact statement was filed on or after January 1, 1970.

3

If Defendants have violated FAHA, said violation occurred as soon as a reasonable period of time passed after the effective date of that Act, August 23, 1968, and no public hearings of the type allegedly required were held on or after August 23 1968.

Years before either Act became effective, Plaintiffs, along with other landowners affected, had actual notice of the planning of the Artesia Freeway project, its projected route and the effect that it would have upon them. By the time each Act became effective, and certainly by the time thereafter that the alleged violations could have been the subject of legal action, the notice to Plaintiffs was plentiful and clear. Yet, Plaintiffs refrained until August 23, 1973, from filing any legal action asserting violation of either statute or attempting to compel compliance with either statute. Their delay so long beyond the period which such legal action could and should have been filed constitutes unreasonable delay.

5

Plaintiffs seek to excuse their delay in filing any legal action to enforce the statutes in question by claiming that they relied on the City Council of Carson to protect their interests. This claimed reliance is neither factually established nor legally sufficient as an excuse for non-action. There is no evidence that the Carson City Council ever sought to enforce against Defendants the provisions of either Act which Plaintiffs seek to enforce in the instant action. From March 1969 through March 1973, the Carson City Council was negotiating with Defendants for route and design changes, which Defendants finally declined to make. Plaintiffs had no basis for believing that the City Council intended to or would undertake any legal action under either statute on Plaintiffs' behalf. Plaintiffs made a conscious determination to refrain from legal action in the hope that their wishes 'would be met through the City Council's negotiations.

6

Throughout the period in question, Defendants continued their planning and construction of the Artesia Freeway project. These activities involved sub-

stantial expenditures of public funds. Such continued activities and expenditures constitute, under the circumstances of this case, a detrimental reliance on the Plaintiffs' failure to file any legal action to enforce the procedural requirements of the statutes in question. Lathan v. Volpe, 455 F.2d 1111, 1122 (9th Cir. 1971); Clark v. Volpe, 342 F. Supp. 1324, 1329 (E.D.La.1972). The grant of injunctive relief of the type sought herein at this time, following said detrimental reliance by said Defendants, would constitute severe prejudice to Defendants. Said prejudice is not outweighed by any public consideration to the contrary, the Court noting particularly that the provisions of the statutes sought to be enforced are procedural in nature and, if enforced, would not necessarily result in any change in the freeway project other than delay in its construction.

### 7

The Court, having found unreasonable delay by the Plaintiff, and prejudice as to Defendants if equitable relief is granted, the doctrine of laches bars the relief sought by Plaintiff herein. There is no dispute of any material fact. Defendants are entitled to judgment on the First and Third Causes of Action as a matter of law. Defendants' Motion for Summary Judgment as to the First and Third Causes of Action is granted.

### 8

Matter herein expressed as a conclusion of law, which is later deemed to be a finding of fact, is hereby found as a fact. Similarly, any matter herein expressed as a finding of fact, which is later deemed to be a conclusion of law, is hereby expressed as a conclusion of law.

#### JUDGMENT FOR DEFENDANTS ON REMAINING COUNTS OF COMPLAINT

The Motions of various Defendants for Summary Judgment came before the Court for hearing on September 24, 1973, and September 28, 1973. On September 24, 1973, the Court announced the grant of Defendants' Motion for Summary Judgment as to Plaintiff's Second Cause of Action. A formal Judgment dismissing said Cause of Action was filed November 7, 1973. As to the First and Third Causes of Action, the matters were submitted on September 28, 1973. The Court contemporaneously herewith has filed its Findings of Fact and Conclusions of Law as to the First and Third Causes of Action wherein Defendants' Motion for Summary Judgment is ordered granted as to each said Cause of Action.

Therefore, it is ordered, adjudged and decreed as follows:

1. The First and Third Causes of Action of Plaintiff's Complaint herein are dismissed. Plaintiff shall take nothing as a result thereof and Defendants shall have judgment against Plaintiff on each said Cause of Action.

2. The Clerk shall transmit a copy of this Judgment to counsel for the parties by United States mail.